Robert Patrick HORAN, et al., Plaintiff,

and

Jonnie S. Koch, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN; Perma Pacific, Inc.; Monte H. Rial; Charles H. Black, et al., Defendants–Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Ernest G. Dick, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN; Perma Pacific, Inc.; Monte H. Rial; Charles H. Black, et al., Defendants–Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

James Grady Butler, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN; Perma Pacific, Inc.; Monte H. Rial; Charles H. Black, et al., Defendants–Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

John Thomas Logue, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN; Perma Pacific, Inc.; Monte H. Rial; Charles H. Black, et al., Defendants–Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

George E. Johnson, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN; Perma Pacific, Inc.; Monte H. Rial; Charles H. Black, et al., Defendants–Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Walter Saccani, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Edwin D. Baumann, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Donald W. Duffy, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Finnis Arnold Epperson,
Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Donald Joseph Odenbach,
Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

William R. Barnes, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Robert Patrick HORAN, et al., Plaintiff,

and

Gerald J. Scott, Plaintiff–Appellant,

v.

KAISER STEEL RETIREMENT PLAN;
Perma Pacific, Inc.; Monte H. Rial;
Charles H. Black, et al., Defendants–
Appellees.

Nos. 89–56116, 89–56119, 89–56120, 89–
56122 to 89–56124, 89–56127, 89–56130
to 89–56132, 89–56135 and 89–56136.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1991.

Decided Nov. 4, 1991.

Donald H. Dye, Dye, Thomas, Luebs & Mort, Riverside, Cal., for plaintiffs-appellants.

Julia A. Molander, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees Kaiser Steel Retirement Plan, Miles Yeagley, George Seplak, Richard Hoges, Monty H. Rial, Patrick J. Hunt, Charles Holmes and Robert Merrick.

Roy G. Weatherup, Haight, Brown & Bonsteel, Santa Monica, Cal., for defendant-appellee Charles H. Black.

Jean Marie Breen, Office of Gen. Counsel, Washington, D.C., for amicus curiae Pension Benefit Guar. Corp.

Before NORRIS and THOMPSON, Circuit Judges, and KING, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

The plaintiffs are former employees of Kaiser Steel Corporation. They brought this suit under the Employee Retirement Income Security Act to recover annuities they contend they are entitled to under the terms of Kaiser's pension plan, and/or as a result of the individual defendants' breach of their fiduciary duties. The district court granted the defendants' summary judgment motion and dismissed the plaintiffs' claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURE

Twenty-four former Kaiser Steel Corporation ("Kaiser") employees brought this action against the Kaiser Steel Retirement Plan ("Plan") and former members of the Plan's Investment Committee. The plaintiffs were beneficiaries of the Plan, which was a defined benefit plan under the Employee Retirement Income Security Act ("ERISA"). The Investment Committee was responsible for directing Plan investments.

From 1977 to 1984, the Plan purchased annuities for each retiree. To purchase an annuity, the Plan would pay between $150,000 to $200,000 per retiree to an insurance company. The insurance company would then assume responsibility for the monthly pension payments.

In the late 1970s, Kaiser began facing economic difficulties. In 1983, Kaiser decided to close its Fontana mill. All the plaintiffs were employed at the Fontana mill at this time. As a result of the closure, an unusually large number of employees became eligible for retirement. In 1984, 199 employees retired, and the Plan spent $15.1 million to purchase an annuity for each of these retirees. By 1985, the Plan was facing a financial crisis. A memo directed to the Investment Committee stated that the Plan assets totaled only $1.1 million and that the continued purchases of annuities would completely exhaust the Plan by February 1985.

In February 1985, the Investment Committee responded by adopting a resolution ("1985 resolution") to discontinue the purchase of annuities. The Investment Committee decided to begin paying pension benefits directly from the Plan trust. The 1985 resolution stated that annuities would not be purchased for employees retiring after January 1985, or for those employees who had retired prior to January 1985 but had not had annuities purchased for them.

The amount received in monthly payments directly from the trust was the same amount the retirees would have received had an annuity been purchased for them. The Plan's assets were sufficient to continue these monthly payments until February 1987, when Kaiser filed for Chapter 11 bankruptcy. The Plan then terminated under Title IV of ERISA, and the Pension Benefit Guaranty Corporation ("PBGC") became the statutory trustee of the Plan and began making the payments to the beneficiaries. The retirees who were receiving monthly benefits directly from the trust suffered a reduction in monthly benefits when the PBGC took control. In contrast, the amount of monthly payments remained the same for those employees for whom an annuity had been purchased.

The plaintiffs brought suit in an attempt to gain an annuity for each individual plaintiff. The district court granted the defendants' motion for summary judgment and dismissed the case. This appeal followed.

## DISCUSSION

The plaintiffs present two claims which they allege entitle them to annuities. The first claim arises under 29 U.S.C. § 1132(a)(1)(B) (the "benefits claim"), and alleges the terms of the Plan entitle the plaintiffs to an annuity. The second claim arises under either sections 1109 and

---

* Hon. Samuel P. King, Senior United States District Court Judge for the District of Hawaii, sitting by designation.

1132(a)(2), or section 1132(a)(3) (the "fiduciary breach claim"). This claim alleges the individual defendants breached their fiduciary duties. We address each claim in turn.

## A. Benefits Claim

### 1. *Exhaustion of Administrative Remedies*

The plaintiffs first contend the district court erred by requiring the plaintiffs to exhaust their administrative remedies pursuant to the Plan. We conclude a waiver of the exhaustion requirement is appropriate in this case.

A beneficiary seeking a determination of rights or benefits under a plan must first exhaust the administrative remedies provided by the plan.[1] *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980). A district court has discretion to waive the exhaustion requirement, *Southeast Alaska Conservation Council v. Watson,* 697 F.2d 1305, 1309 (9th Cir.1983), and should do so when exhaustion would be futile. *Amato,* 618 F.2d at 568.

We believe it would be unnecessary to require the plaintiffs to exhaust their administrative remedies. The PBGC is now administering the Plan and unequivocally states in its amicus brief that the plaintiffs are not entitled to an annuity under the terms of the Plan. Thus, we are fully apprised of the administrator's expertise and its decision as to the merits of the plaintiffs' claim. Therefore, we will waive the exhaustion requirement and address the merits of the plaintiffs' benefits claim.

### 2. *Benefits Claim*

The plaintiffs contend they are entitled to an annuity under the terms of the Plan. The plaintiffs argue the Investment Committee did not have discretion to terminate the practice of purchasing annuities. In the alternative, if we conclude the Investment Committee did possess discretion over whether to purchase annuities, the plaintiffs argue the decision to terminate the

purchase of annuities was arbitrary and capricious. We reject both arguments.

Section F(3)(b) of the Plan gives the Investment Committee the option of purchasing annuities:

> The Investment Committee *may elect* to have any pension under this Plan paid by purchase of an annuity from an insurance company. The purchase of such an annuity shall discharge all payment obligations under the Plan.

(emphasis added). By using the word "may," the Plan does not obligate the Investment Committee to purchase an annuity for each retiree. The plaintiffs, however, rely on two arguments to contend the Investment Committee was deprived of its discretion and obligated to purchase annuities for the plaintiffs: (1) the past practice of purchasing annuities obligated the Investment Committee to continue to purchase annuities, and (2) the Investment Committee is equitably estopped from refusing to purchase annuities based on their alleged promises to purchase annuities.

Until 1985, the Investment Committee purchased annuities for each retiree. This past practice does not deprive the Investment Committee of its discretion and obligate it to purchase annuities for all future retirees. *See Oster v. Barco,* 869 F.2d 1215, 1219 (9th Cir.1988). To hold otherwise would require a fiduciary to continue purchasing annuities when it is financially unsound to do so. Binding a fiduciary based on past practice "would impair the flexibility necessary for proper financial management" of plans. *Id.* (quoting *Fine v. Semet,* 699 F.2d 1091, 1094 (11th Cir. 1983)).

The plaintiffs next argue the Investment Committee is equitably estopped from refusing to purchase annuities for the plaintiffs based on alleged promises made by members of the Investment Committee. The plaintiffs allege members of the Investment Committee promised to buy annu-

---

**1.** The exhaustion requirement applies to the plaintiffs' benefits claim, but does not apply to the plaintiffs' fiduciary breach claim because this claim alleges a violation of the statute, ERISA, rather than the Plan. *See Graphic Communications Union V. GCIU–Employer Retirement Benefit Plan,* 917 F.2d 1184, 1187 (9th Cir.1990).

ities for the plaintiffs, and the plaintiffs detrimentally relied on these promises by delaying their retirement to help with the closure of the Fontana mill.

We need not decide whether the plaintiffs can invoke equitable estoppel to deprive the defendants of their discretion under the Plan. The record does not indicate that any member of the Investment Committee or any other person associated with the administration of the Plan promised to purchase annuities for the plaintiffs. The statements referred to by the plaintiffs merely state that Kaiser would continue to provide benefits under the existing Plan in the event the Fontana mill ceased operations. The statements do not promise a specific form of benefit. *See* CR 139, Exhs. 1–25, ¶¶ 5–7; CR 139, Exh. 19, para. 6(f); CR 140, Exh. 84, ¶¶ 2, 3; CR 140, Exhs. 8, 13, 18, 23, 24, 27, 36, 41, 48, 57, 61, 68, 72, 76, 80, 92, 97, 99, 103, and 108. A letter to appellant James Nauta does state that an annuity will be purchased for Nauta. *See* CR 140, Exh. 88. However, this letter is from a Kaiser employee who does not have any relationship with the administration of the Plan. *See id.* We, therefore, reject the plaintiffs' arguments and conclude the Investment Committee did have discretion to terminate the practice of purchasing annuities.

■ We will not disturb the Investment Committee's exercise of its discretion unless the Investment Committee acted arbitrarily. *Oster*, 869 F.2d at 1217. A decision is not arbitrary unless it is "not grounded on *any* reasonable basis." *Id.* at 1218 (emphasis in original) (quoting *Elser v. I.A.M. Nat'l Pension Fund*, 684 F.2d 648, 656 (9th Cir.1982), *cert. denied*, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983)). We, however, will review decisions with "lesser deference" if the employer administers the plan and other circumstances "implicate[ ] a serious conflict between the interests of the employer and the beneficiaries." *Oster*, 869 F.2d at 1217. We need not resolve the appropriate stan-

dard because, under either standard, we conclude the Investment Committee did not abuse its discretion.

Because of the closure of the Fontana mill in 1984, an unusually large number of employees retired (199 employees). The Investment Committee purchased an annuity for each of these retirees, at a cost of $15.1 million. Each annuity cost between $150,000 to $200,000 per retiree. By January 1985, the plan assets totaled $1.1 million. The continued purchases of annuities would have depleted the Plan by February 1985. In response, the Investment Committee terminated its practice of purchasing annuities and started making monthly payments directly from the Plan. This manner of payment was less costly than a lump sum payment to an insurance company for an annuity. Thus, the decision to terminate the purchases of annuities was a reasonable attempt to salvage a financially depleted Plan and to protect future retirees.[2]

### B. Fiduciary Breach Claim

■ The plaintiffs next contend the defendants breached their fiduciary duty to administer the Plan prudently. The plaintiffs seek to impose personal liability on the defendants pursuant to either sections 1109 and 1132(a)(2), or section 1132(a)(3). For purposes of this appeal, the particular section does not affect the resolution of the issues appealed. As a remedy for the alleged breach, the plaintiffs seek remedies which would furnish them with annuities. We conclude the plaintiffs cannot pursue this claim because ERISA does not provide recovery for the remedies sought.

An individual beneficiary may bring a fiduciary breach claim, but must do so for the benefit of the plan. *Massachusetts Mutual Life Ins. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). An individual beneficiary may not pursue a fiduciary breach claim to recover benefits or remedies beyond those provided by a plan. *Id.* at 144, 148, 105 S.Ct. at

---

2. The appellees allege there were 600 future retirees who were affected by the 1985 resolu-

tion.

3091, 3093 (holding sections 1109 and 1132(a)(2) do not provide "a cause of action for extra-contractual damages"). Any recovery for a violation of sections 1109 and 1132(a)(2) must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries. *Id.* at 140, 105 S.Ct. at 3089. The Supreme Court reasoned the fiduciary duty provisions in ERISA are primarily concerned with protecting the integrity of the plan, which in turn protects all the beneficiaries, rather than remedying each wrong suffered by individual beneficiaries. *Id.* at 142, 105 S.Ct. at 3090.

We have extended the reasoning of *Russell* to section 1132(a)(3), which allows recovery of "other appropriate equitable relief." *Sokol v. Bernstein,* 803 F.2d 532, 536 (9th Cir.1986). Section 1132(a)(3) also does not provide an action for an individual beneficiary to recover extra-contractual remedies. *Id.* Under *Russell* and *Sokol,* the plaintiffs fail to present a fiduciary breach claim if the only remedy sought is for their own benefit, rather than for the benefit of the Plan as a whole.

The remedies sought by the plaintiffs are for their own benefit, and not for the benefit of the Plan. The objective of the plaintiffs' suit is to recover an annuity for each individual plaintiff. The plaintiffs' third amended complaint focuses largely on requesting a declaratory judgment that the plaintiffs are entitled to an annuity and an injunction requiring the defendants to purchase annuities for the plaintiffs. *See* CR 111. If the individual defendants were required to purchase an annuity for the plaintiffs, this remedy would only benefit the plaintiffs and not the Plan. This remedy would further deplete a financially unstable plan. We conclude, therefore, the district court should have dismissed the fiduciary breach claim for failure to state a claim. Because we conclude the plaintiffs did not bring a claim on behalf of the Plan, we need not address whether the defendants breached their fiduciary duties.

## CONCLUSION

We conclude that the Investment Committee had discretion to terminate the purchase of annuities and that this decision was not an abuse of its discretion. We also conclude the plaintiffs failed to state a claim for breach of the defendants' fiduciary duties because their claim was not on behalf of the Plan.

AFFIRMED.