50 F.3d 757
 19 Employee Benefits Cas. 1044, Pens. Plan Guide P 23908K
Connie PARKER; Judy Havens; Miles Silverthorn; Diane
Redfern; Christopher Gruenfeld, et al.,
Plaintiffs-Appellants,
v.
BANKAMERICA CORPORATION, a Delaware corporation, Defendant-Appellee.
 No. 93-36173.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 10, 1995.
Decided March 23, 1995.
 
 Thomas H. Grimm and Eric Frimodt (on the briefs), Inslee, Best, Doezie & Ryder, Bellevue, WA, for plaintiffs-appellants.
 Marvin L. Gray, Jr., Davis, Wright & Tremaine, Seattle, WA, for defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: ALARCON and BRUNETTI, Circuit Judges, and KELLEHER,* District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 The appellants are former employees of BankAmerica Corporation ("former employees"). They appeal from the order granting BankAmerica Corporation's ("BankAmerica") motion for summary judgment. The former employees were originally employed by Security Pacific Bank of Washington ("Security Pacific"). On April 22, 1992, they became BankAmerica employees when BankAmerica merged with Security Pacific. BankAmerica sold the business units where the former employees worked to Key Bank and West One Bank on September 4, 1992. This divestiture was required by the State of Washington as a condition of the state's approval of the merger. As employees of Key Bank or West One Bank, the former employees received positions with comparable responsibilities and salaries as the positions they held with BankAmerica.
 
 
 2
 The former employees contend that because their positions with BankAmerica were terminated when their business units were sold to Key Bank or West One Bank, they are entitled to benefits under the BankAmerica Merger Transition Program ("MTP"). The former employees also maintain that the BankAmerica Corporation Employee Benefits Administrative Committee ("BankAmerica Benefits Committee") breached its fiduciary duty to them, violated ERISA's disclosure requirements, and it should be equitably estopped from denying their request for benefits under the MTP. The former employees also request an award of attorneys' fees for the expenses they have incurred in bringing this appeal.
 
 
 3
 We affirm the order granting BankAmerica's motion for summary judgment. The BankAmerica Benefits Committee did not abuse its discretion in finding that the former employees are not eligible for benefits under the MTP because no evidence was presented to that body that they did not receive "appropriate" positions with Key Bank or West One Bank. We also affirm the judgment of dismissal of the additional claims in the complaint. We deny the former employees' request for an award of attorneys' fees for the expenses they incurred in bringing this appeal.
 
 I.
 PERTINENT FACTS AND PROCEDURAL HISTORY
 
 4
 The former employees brought this action for an award of severance benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001. The former employees were originally employed by Security Pacific Bank of Washington ("Security Pacific"). On April 22, 1992, Security Pacific and BankAmerica merged. The merged corporation is known as the BankAmerica Corporation.
 
 
 5
 BankAmerica adopted the MTP to benefit workers who were displaced due to the merger. The MTP does not contain a definition of a "displaced worker." The record shows, however, that three categories of employees were involved in the BankAmerica/Security Pacific merger. The first group of employees continued their employment with BankAmerica after the merger. The MTP does not provide any benefits to the retained employees. The second group of employees, like the former employees who are before us, worked in business units that were sold, following the merger, as part of the divestiture. The Administrative Procedures require that the employees affected by the divestiture receive an appropriate position with Key Bank or West One Bank. An employee in the second category who did not receive an appropriate position is entitled to the MTP benefits. The third group includes those persons whose employment was terminated as the result of the displacement caused by the merger. The displaced employees were not part of the business units that were sold to Key Bank or to West One Bank as part of the divestiture. Displaced employees were entitled to the following benefits: "Transition assistance which includes Program pay, including severance pay; Outplacement assistance; Continuation/extension of certain benefits; Special treatment of stock based benefits; AND Additional special benefits." Thus, the MTP provides discrete benefits for former employees who were guaranteed and received continuous employment, without interruption, with Key Bank or West One Bank after the divestiture, and for the displaced employees. Under the MTP, divested employees are entitled to appropriate positions with Key Bank and West One Bank. If a divested employee did not receive an appropriate position, that employee is eligible for benefits under the MTP. In contrast, displaced employees were entitled to transition benefits upon being notified that their employment would be terminated.
 
 
 6
 The MTP brochure contained a "Summary Plan Description" ("Summary"). The Summary states that "[t]he [MTP] brochure and the [Merger Transition Program] Guidelines and Administrative Procedures are a complete statement of the Merger Transition Program Severance Pay Plan and supersede all prior plans, representations, and proposals, written or oral, relating to this subject matter." (emphasis added).
 
 
 7
 The Summary lists three criteria for eligibility for benefits as a displaced employee under the MTP.
 
 
 8
 1. The class, unit or group of individuals covered by the [MTP] is regular full-time or regular prime time salaried employees of a domestic BankAmerica Corporation, company, subsidiary, or affiliate ... or of a domestic Security Pacific Corporation company, subsidiary or affiliate employed within the United States, as determined by management, below the senior vice president level.
 
 
 9
 2. Other eligibility factors for the Program include:
 
 
 10
 A. That the employee was notified of displacement between January 1, 1992 and one (1) year of the date of the Security Corporation/BankAmerica Corporation merger; and
 
 
 11
 B. That the employee's employment must terminate as a result of the displacement.
 
 
 12
 The Merger Transition Program Guidelines and Administrative Procedures ("Administrative Procedures") specify that:
 
 
 13
 employees impacted by company acquisitions, sales and/or divestitures may be covered by the Merger Transition Program, except that employees who: (1) are offered a position in the seller's/purchaser's organization which the company deems appropriate ... are ineligible for this Program, and/or Transition Assistance, including severance pay and benefits.
 
 
 14
 (emphasis added). The Administrative Procedures do not contain a definition of an "appropriate position."
 
 
 15
 On September 4, 1992, after the merger between BankAmerica and Security Pacific, BankAmerica sold the business units where the former employees worked to Key Bank and West One Bank. These sales were required by the State of Washington as a condition of the state's approval of the merger. The purchase agreements between BankAmerica and Key Bank or West One Bank provide that:
 
 
 16
 To the extent consistent with [Key Bank or West One Bank's] existing compensation structure for comparable positions and comparable officer titles, all [BankAmerica employees] shall be offered employment at base wages and salaries no less favorable than the wages and salaries currently being paid by [BankAmerica] to such employees and in positions with comparable responsibilities and officer titles.
 
 
 17
 All Employees who accept employment with [Key Bank or West One Bank] as of the Closing Date shall be eligible to participate in the employee benefit plans and other fringe benefits of [Key Bank or West One Bank] on the same basis as such plans and benefits are offered to employees of [Key Bank or West One Bank] with comparable positions with [Key Bank or West One Bank]. [Key Bank or West One Bank] shall credit such Employees for their length of service with [BankAmerica or Security Pacific] for all purposes under each employee benefit plan and fringe benefit plan to be provided by [Key Bank or West One Bank] to such Employees. Such service, however, need only be counted for purposes of vesting and eligibility under any pension benefit plan. For purposes of [this section], "employee benefit plans and other fringe benefits" includes, without limitation, pension and profit sharing plans, retirement and post retirement welfare benefits, health insurance benefits (medical and dental) disability, life and accident insurance, sickness benefit [sic], vacation, employees' loans and banking privileges.
 
 
 18
 (emphasis added).
 
 
 19
 On November 6, 1992, the former employees requested severance benefits from BankAmerica under the MTP. The former employees asserted that their employment with BankAmerica was terminated when their branches or business units were sold to Key Bank and West One Bank. Thus, they argue that they were eligible to receive the benefits received by displaced employees under the MTP. On May 12, 1993, the BankAmerica Benefits Committee informed the former employees that their request for benefits under the MTP was denied.
 
 
 20
 The BankAmerica Benefits Committee determined that positions the former employees received with Key Bank and West One Bank were "appropriate." The BankAmerica Benefits Committee based this determination on the requirement in the purchase agreements between BankAmerica and Key Bank or West One Bank that the former employees affected by the divestiture receive comparable wages and salaries. The BankAmerica Benefits Committee noted that "[n]o affected employee has advised the Committee that [Key Bank or West One Bank] did not fulfill the[ ] obligations" in the purchase agreements. Accordingly, the BankAmerica Benefits Committee determined that the former employees were not eligible for benefits provided to displaced employees under the MTP.
 
 
 21
 The employees filed this action on June 11, 1993. The complaint contains the following claims: 1) breach of the terms of the MTP in violation of ERISA; 2) breach of fiduciary duty under ERISA; 3) failure to fulfill ERISA disclosure requirements; and 4) equitable estoppel.
 
 
 22
 BankAmerica moved for summary judgment on all claims raised in the complaint. The court granted BankAmerica's motion. The former employees timely appeal the entry of the judgment dismissing this action.
 
 II.
 ANALYSIS
 
 23
 The former employees contend that the BankAmerica Benefits Committee improperly relied on exclusions found in the Administrative Procedures. Alternatively, they argue that even if it was not an abuse of discretion to rely on the exclusions, the record shows that they did not receive "appropriate" positions with Key Bank and West One Bank. Further, the former employees assert that the district court erred in granting BankAmerica's motion for summary judgment as to their claims for breach of fiduciary duty, violation of ERISA disclosure requirements, and equitable estoppel. We address each of these contentions under separate headings.
 
 
 24
 We review a grant of summary judgment de novo. Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 842 (9th Cir.1994); Smith v. Noonan, 992 F.2d 987, 989 (9th Cir.1993). In resolving this matter, we, like the trial court, must review the propriety of the BankAmerica Benefits Committee's denial of the former employees' request for benefits under the MTP. See e.g., Jung v. FMC Corp., 755 F.2d 708, 713 (9th Cir.1985) (on an appeal of a district court order relating to the denial of benefits under an ERISA employee welfare benefit plan, an appellate court reviews the decision of the welfare plan administrator); Blau v. Del Monte Corp., 748 F.2d 1348, 1352 (9th Cir.), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (in determining whether benefits were improperly denied under ERISA, "this court, like the trial court, reviews another decisionmaker: the welfare benefit plan administrator.").
 
 
 25
 A denial of ERISA benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If the benefit plan gives the administrator such authority, the appropriate standard of review is abuse of discretion. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir.1994). In this matter, it is undisputed that the BankAmerica Benefits Committee had discretionary authority to determine eligibility for benefits and to construe the terms of the severance pay plan. BankAmerica, however, has a conflict of interest because of its dual position as the plan administrator and as the former employees' prior employer. Eley v. Boeing Co., 945 F.2d 276, 279 (9th Cir.1991). Thus, we must review the BankAmerica Benefits Committee's denial of benefits under a heightened level of scrutiny. Bruch, 489 U.S. at 115, 109 S.Ct. at 956. We must weigh BankAmerica's conflict of interest as a factor in determining whether there was an abuse of discretion. Id. (citations omitted); Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1524 (9th Cir.1993).
 
 A. Alleged breach of the terms of the MTP
 
 26
 1. Exclusions in the Administrative Procedures are applicable
 
 
 27
 The former employees argue that because the exclusions found in the Administrative Procedures are not set forth in the MTP brochure, they cannot be relied upon to deny their request for benefits. We disagree.
 
 
 28
 The MTP brochure states that "[t]he [MTP] brochure and the Guidelines and Administrative Procedures are a complete statement of the [MTP] and supersede all prior plans, representations, and proposals, written or oral." Documents that relate to the same subject matter and that were executed as part of the same transaction are construed as part of the same instrument. See e.g., Turner v. Wexler, 14 Wash.App. 143, 146, 538 P.2d 877 (1975) (instruments that are part of the same transaction and that relate to the same subject matter should be read and construed together as one contract). Accordingly, the former employees' contention that the exclusions found in the Administrative Procedures cannot be used to deny their request for benefits lacks merit.
 
 
 29
 2. The Summary of the MTP brochure and the Administrative
 
 Procedures are not in conflict
 
 30
 The former employees maintain that the exclusions found in the Administrative Guidelines conflict with the three eligibility criteria set forth in the Summary of the MTP brochure. The former employees contend that the Summary controls because of this alleged conflict. See Price v. Provident Life & Accident Ins. Co., 2 F.3d 986, 988 n. 1 (9th Cir.1993) (if there is a conflict between the provisions of a summary policy and the policy itself, the terms in the summary control).
 
 
 31
 There is no conflict between the Summary and the Administrative Procedures. The Summary spells out the benefits to be provided for displaced employees who were not employed in the business units that were sold as part of the divestiture and whose employment was terminated as a result of the merger. On the other hand, the Administrative Procedures refer to employees whose business units were sold as part of the divestiture and who received appropriate positions with Key Bank or West One Bank. Read together the Summary and the Administrative Procedures allow an employee whose business unit was sold as part of the divestiture to receive MTP benefits if he or she did not receive an appropriate position with Key Bank or West One Bank. The BankAmerica Benefits Committee did not abuse its discretion when it considered the exclusions found in the Administrative Procedures to determine whether the former employees were eligible for benefits under the MTP.
 
 
 32
 3. The former employees received "appropriate" positions
 
 
 33
 after the divestiture
 
 
 34
 The former employees argue that the BankAmerica Benefits Committee clearly erred when it found that they had received "appropriate" positions with Key Bank or West One Bank. The former employees assert that the BankAmerica Benefits Committee failed to make an individualized determination regarding whether, following the divestiture, each employee had received an "appropriate" job with Key Bank or West One Bank. This contention lacks merit.
 
 
 35
 The purchase agreements between BankAmerica and Key Bank or West One Bank state explicitly that "all [BankAmerica Employees] shall be offered employment at base wages and salaries no less favorable than the wages and salaries currently being paid by [BankAmerica] to such Employees in positions with comparable responsibilities and officer titles." The former employees did not present any evidence to the BankAmerica Benefits Committee that the job and benefits provisions of the purchase agreements were breached. Thus, the issue whether the BankAmerica Benefits Committee abused its discretion in failing to make an individualized determination regarding each of the former employees' positions with Key Bank or West One Bank is not properly before this court. See Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir.1994) (employees cannot establish that a plan administrator abused its discretion by submitting evidence to the district or appellate court that was not submitted to the administrator).
 
 
 36
 The former employees also argue that one hundred other former BankAmerica employees received benefits under the MTP even though they were also hired by West One Bank and Key Bank. It is undisputed, however, that these displaced employees were not employed in the business units that were sold to Key Bank or West One Bank as part of the divestiture. Instead, their employment with BankAmerica was terminated without a guarantee of an appropriate job with Key Bank or West One Bank. After losing their jobs with BankAmerica, these displaced employees obtained employment with Key Bank and West One Bank through their own efforts. As displaced employees, they were expressly entitled to benefits under the MTP. The former employees who received appropriate positions with Key Bank and West One Bank were not. The former employees' assertion that they were wrongfully denied benefits because the displaced employees, who were hired by Key Bank and West One Bank received severance pay, is without merit.
 
 
 37
 In their opposition to the motion for summary judgment, the former employees presented declarations showing that their present employment with Key Bank or West One Bank is not "appropriate" because they "have suffered serious financial hardship to their pension benefits and have had significant reductions in their other benefits, such as the additional cost to each employee for medical coverage, lowering of the spousal insurance coverage from $50,000 to $5,000 and career paths that are truncated by the ownership of the business units by a regional bank instead of a large national bank."
 
 
 38
 To support this argument, the former employees direct our attention to the declarations of Connie Parker, Diane Redfern and Judith Jacobs, dated October 5, 1993, October 8, 1993, and October 11, 1993, respectively. These declarations were not submitted to the BankAmerica Benefits Committee prior to its May 12, 1993 decision that the former employees' were not eligible for benefits under the MTP. No evidence was presented to the BankAmerica Benefits Committee that they suffered any financial hardship as a result of the merger. We cannot consider evidence presented to the district court for the first time in determining whether the BankAmerica Benefits Committee abused its discretion. Taft, 9 F.3d at 1471.
 
 
 39
 In summary, the former employees have failed to establish that the BankAmerica Benefits Committee abused its discretion in denying their request for benefits under the MTP. To be eligible for benefits under the MTP, the former employees were required to present evidence to the BankAmerica Benefits Committee that the employees did not receive "appropriate" positions with Key Bank and West One Bank. Because the former employees failed to present any evidence to the BankAmerica Benefits Committee that Key Bank or West One Bank denied them an appropriate position, we hold that the BankAmerica Benefits Committee did not abuse its discretion in rejecting the former employees' request for benefits under the MTP.
 
 
 40
 B. No violation of the policy that prompted the enactment of ERISA
 
 
 41
 The former employees assert that denial of their request for benefits violates the policy of ERISA. The policy underlying ERISA is twofold: to protect employees from the economic hardship of joblessness, and to reward employees for past service to the company. Bradwell v. GAF Corp., 954 F.2d 798, 801 (2d Cir.1992). The first criterion does not apply in this case because it is undisputed that the Administrative Procedures guarantee that the former employees would continue working without interruption after the divestiture. Further, the record presented to the BankAmerica Benefits Committee does not support the former employees' argument that they have been denied consideration for their past service. The former employees allege that Key Bank and West One Bank "did not assume the past service obligations or recognize past service to Security Pacific." The former employees' position lacks merit.
 
 
 42
 No evidence was presented to the BankAmerica Benefits Committee that the former employees were denied credit for their past services to Security Pacific and/or BankAmerica. The purchase agreements provide that the former employees would be eligible to participate in the employee benefit plans and other fringe benefits of Key Bank and West One Bank and that they would receive credit for their service with Security Pacific and/or BankAmerica under Key Bank and West One Bank's employee benefit plans. The evidence contained in the declarations submitted to the district court was not presented to the BankAmerica Benefits Committee prior to its May 12, 1993 decision. Thus, we cannot consider this evidence in determining whether the BankAmerica Benefits Committee violated the policy underlying ERISA.
 
 
 43
 C. Entitlement of divestiture employees to MTP benefits
 
 
 44
 The former employees assert that relevant case law supports their contention that they are entitled to benefits under the MTP. They base their argument on the fact that their employment with BankAmerica was terminated, notwithstanding the fact that they may have received appropriate positions with Key Bank or West One Bank. To support their position, the former employees rely on Ulmer v. Harsco Corp., 884 F.2d 98 (3rd Cir.1989) and Harris v. Pullman Standard, Inc., 809 F.2d 1495 (11th Cir.1987). The former employees' reliance on these cases is misplaced. Each decision is factually distinguishable from the instant matter.
 
 
 45
 In Ulmer, 884 F.2d 98, the Third Circuit reversed the order granting summary judgment on the ground that the district court misinterpreted a benefits plan. Id. at 99. The plan provided that the corporation would "take all reasonable steps to provide continuing employment." Id. at 102. The district court concluded that this provision was satisfied when a division of the corporation was sold to another company because the employees continued working at the same plant. Id. The district court held that these employees were not entitled to severance payments. Id. The Third Circuit reversed. Id. at 104-05. It concluded that "continuing employment" ended when the employees no longer worked for the corporation. Id. at 102. Accordingly, it held that the severance payment was due when the continuing employment terminated. Id. at 102-03.
 
 
 46
 The MTP does not guarantee severance benefits to all employees who are deprived of continuing employment with BankAmerica. Instead, it expressly denies such benefits to employees whose business units were sold to Key Bank and West One Bank. Ulmer does not advance the former employees' cause.
 
 
 47
 In Harris, 809 F.2d 1495, the Eleventh Circuit affirmed an order granting summary judgment in favor of employees to recover severance benefits under an ERISA plan. Id. at 1496. The plan provided that "[f]or all involuntary terminations, other than [a] 'lay off,' a termination allowance will be granted...." Id. at 1497. The employer in Harris sold its manufacturing plant to another company. Id. The employees were never out of work; they retained their jobs with the purchasing company. Id.
 
 
 48
 The Eleventh Circuit held that the "unambiguous language of the severance benefits policy at issue indicates that 'for all involuntary terminations, other than layoff, the termination allowance will be granted.' " Id. at 1498. (emphasis in the original). The court explained that the policy provides benefits to employees whose job is eliminated "[i]n the event a new assignment [within the company] cannot be identified." Id. at 1497.
 
 
 49
 Unlike the plan construed in Harris, the MTP does not provide that benefits will be paid for all involuntary terminations. Furthermore, the MTP does not state that all employees whose job is terminated will receive benefits if they cannot secure another position with BankAmerica. Finally, the plan in Harris did not provide that employees who received an appropriate position with a purchasing corporation would not receive severance benefits.
 
 
 50
 Our decision in Blau v. Del Monte Corp., 748 F.2d 1348, 1350 (9th Cir.), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) is readily distinguishable from the matter sub judice. In Blau, the benefit plan expressly provided for severance pay when a job was "eliminated" and "alternative employment opportunities are unavailable within the Corporation." Id. at 1354 (emphasis added). Del Monte, relying upon a "secret severance policy," declined to award severance benefits to employees who continued working for a subsidiary corporation after it was sold as an ongoing business. Id. at 1353. We held in Blau, that it was error to hold that no genuine issue of material fact existed regarding whether the plan administrator had acted arbitrarily and capriciously. Id. at 1357. We noted that "[t]he plan does not condition receipt of benefits upon employees' subsequent unemployment, but upon job eliminat[ion]" within the Del Monte Corporation. Id. at 1354-55.
 
 
 51
 In the matter before this court, the MTP explicitly excluded former employees who received appropriate jobs with Key Bank and West One Bank from receiving benefits under the MTP. Thus, unlike the situation in Blau, the former employees were not denied benefits because of a secret plan not set forth in the MTP.
 
 
 52
 Our decision in Jung v. FMC Corp., 755 F.2d 708 (9th Cir.1985), presents strikingly similar facts to those in this matter. In Jung, we were faced with the question whether former employees, whose employment with FMC terminated due to the sale of FMC to the ESD Corporation, were eligible for severance benefits under an ERISA plan. Id. at 709. The purchase agreement between FMC and ESD provided that ESD would offer employment to all salaried employees of the division at "comparable" salaries and that ESD would provide a "substantially comparable level of benefits" to those provided by FMC. Id. After the sale, the employees brought an action against FMC to recover severance benefits under the FMC plan. Id. at 710. The district court granted FMC's motion for summary judgment after determining that the employees were not eligible for benefits under the FMC plan. Id. at 713.
 
 
 53
 We concluded that the language of the FMC plan did not "mandate the payment of severance benefits upon divestiture and transfer of employees." Id. We reasoned that one of the goals of ERISA was to keep plan expenses within reason. Id. at 714. Allowing an employee who does not lose a day of work to recover severance benefits would violate that goal. Id. Accordingly, we held that the FMC plan "did not require payment of severance benefits upon divestiture with comparable reemployment by the purchasing company." Id. at 715.
 
 
 54
 Similarly, the MTP does not require payment of benefits to divested employees who receive appropriate positions with Key Bank or West One Bank. In fact, it expressly excludes such individuals from receiving benefits under the MTP. Thus, our analysis in Jung, compels the conclusion that BankAmerica Benefits Committee did not abuse its discretion in finding that the former employees are not eligible for benefits under the MTP.
 
 
 55
 Our decision in this matter is consistent with the Eighth Circuit's decision in Harper v. R.H. Macy & Co. Inc., 920 F.2d 544 (8th Cir.1990), the Second Circuit's decision in Bradwell v. GAF Corp., 954 F.2d 798 (2d Cir.1992), and the Seventh Circuit's decision in Sly v. P.R. Mallory & Co. Inc., 712 F.2d 1209 (7th Cir.1983).
 
 
 56
 In Harper, 920 F.2d 544, the court held that "when terminated employees are immediately rehired by a departing [employer's] successor under terms that are comparable to those received from their initial employer, the employees are not entitled to severance benefits." Id. at 545-46 (citations omitted).
 
 
 57
 In Bradwell, 954 F.2d 798, employees filed an action against GAF, their former employer, to recover benefits under its ERISA plan, after GAF sold one of its facilities to another company. Id. at 799. All of the employees in the facility continued their employment with the new company. Id. The ERISA plan that was at issue in Bradwell stated that benefits were available to "employees permanently laid off because of lack of work...." Id. The district court granted GAF's motion for summary judgment. Id. It stated that the ERISA plan did not provide for payment to employees who, upon the sale of the facility to another company, retained their jobs. Id. The Second Circuit affirmed. Id. at 801. The court reasoned as follows:
 
 
 58
 Employees kept on by a plant owner's successor are in a different position from those who are laid off but find alternate employment. The former are not faced with the same risk of unemployment as are those who are permanently laid off because of lack of work. The [ERISA] Policy provision ensures that those laid off will not be discouraged from seeking alternative employment; it does not place appellants in the same position as laid off employees who may or may not find other jobs.
 
 
 59
 Id. at 800. The Second Circuit also opined in Bradwell that "in the context of the sale of a business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work." Id. at 801.
 
 
 60
 To complete our discussion of the law of other circuits, we note that in Sly, 712 F.2d 1209, the Seventh Circuit concluded that the administrator of an employee welfare benefit plan did not act arbitrarily and capriciously in finding that employees whose jobs are terminated upon sale of a company division, but who are immediately hired by the purchaser corporation, are not entitled to severance benefits. Id. at 1213. The benefit plan construed in Sly provided that employees "whose services are involuntarily terminated for the convenience of the company" were entitled to separation benefits. Id. at 1212. The court concluded that this language did not apply to an employee immediately employed in a comparable job by the purchaser of a division or plant. Id. at 1213. In reaching this conclusion, the Seventh Circuit stated that an employee who is immediately hired by a successor company has not been involuntarily terminated because the same position remained available with the new employer. Id. at 1211-13. In arriving at this holding, the court relied upon the fact that the company issued a policy statement unilaterally, and not as part of a collective bargaining agreement. Id. at 1213. The court noted that the company had never awarded severance pay to employees who were re-employed in comparable jobs on prior sales of plants or divisions. Id. Thus, the Seventh Circuit appears to have interpreted the words "involuntary termination" as used in the plan, in light of the company's "uniform practice" of not awarding severance benefits under these circumstances. Id.
 
 
 61
 We need not rely on industry or company practice in discerning the intent of the drafters of the MTP. It spells out in plain words that employees who receive appropriate positions, following the sale of a business unit, are not entitled to severance benefits.
 
 
 62
 In summary, consistent with the law of this circuit set forth in Jung, we hold that the BankAmerica Benefits Committee did not abuse its discretion in finding that the former employees who were guaranteed uninterrupted appropriate employment after the divestiture of a business unit are not eligible to receive benefits solely because their prior employment with BankAmerica was terminated.
 
 
 63
 D. The BankAmerica Benefits Committee did not breach its
 
 
 64
 fiduciary duty
 
 
 65
 The former employees assert that the BankAmerica Benefits Committee led them to believe that they would not be harmed financially by the divestiture, and that they would receive the same benefits from Key Bank or West One Bank as the benefits they enjoyed with BankAmerica. They argue that BankAmerica concealed the fact that their business units would be sold as part of the divestiture. They assert that BankAmerica kept the sale of their business units a secret to keep its customer base intact, so that BankAmerica could obtain a higher sale price. The former employees contend that if they had left BankAmerica prior to the divestiture, BankAmerica's customers would have followed, and the sale price of the divested business units would have been substantially reduced. They assert that if they had known that the BankAmerica Benefits Committee would deny their request for severance benefits, they would have pursued other employment opportunities.
 
 
 66
 The former employees's claim for breach of fiduciary duty lacks merit. Although individual beneficiaries may bring a breach of fiduciary duty claim against an ERISA plan administrator, they must do so for the benefit of the plan. "Any recovery for a violation of [Sec. 1132(a)(2) ] must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries." Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1418 (9th Cir.1991) (citations omitted). The basis of this rule is that the "fiduciary duty provisions in ERISA are primarily concerned with protecting the integrity of the plan, which in turn protects all beneficiaries, rather than remedying each wrong suffered by individual beneficiaries." Id. The former employees brought this action to recover severance benefits under the plan. It was not brought for the benefit of the plan. Thus, the district court did not err in granting BankAmerica's motion for summary judgment as to the former employees' second cause of action in the complaint.
 
 
 67
 E. No violation of ERISA disclosure requirements
 
 
 68
 The former employees also assert that the BankAmerica Benefits Committee erred in denying their request for benefits under the MTP because BankAmerica violated ERISA's disclosure requirements. Specifically, the former employees claim that the BankAmerica Benefits Committee failed to provide them with a copy of the MTP brochure upon their request. This fact, however, is not sufficient for the former employees to recover benefits under the MTP because "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy." Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir.), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (citations omitted).
 
 
 69
 In Blau, we concluded that the plan administrator failed to fulfill any of ERISA's procedural requirements. Id. at 1353. There was no summary plan description, no claim procedure, and no notice was given to the employees of the administrator's decisions. Id. We acknowledged that the administrator's continuing failure to comply with any of ERISA's procedural requirements was a factor to consider in determining whether the decision to deny benefits was arbitrary and capricious. Id. at 1354. Contrary to the former employees' assertion, however, Blau does not hold that the failure to comply with ERISA's procedural requirements compels an award of employee benefits.
 
 
 70
 In order for the former employees to recover benefits under the MTP for the BankAmerica Benefits Committee's failure to provide them with a copy of the MTP, they would have to show that the ERISA violation "caused a substantive violation or themselves worked a substantive harm." Bogue v. Ampex Corp., 976 F.2d 1319, 1326 n. 33 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993) (citations omitted). The former employees were not entitled to receive benefits under the MTP. Therefore, they did not suffer a substantive harm. See Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1308 (9th Cir.1986) (citations omitted) (because the plaintiff was not prejudiced by the failure to comply with ERISA disclosure requirements, there was no prejudice and no substantive harm).
 
 
 71
 F. No showing has been made of equitable estoppel
 
 
 72
 The former employees' final claim is that the BankAmerica Benefits Committee should be equitably estopped from denying their request for severance benefits under the MTP. The former employees argue that they relied on statements in two interoffice publications, "Connections," dated December 12, 1991, and "Q & A," dated March 17, 1992, which led them to believe that they would be eligible for benefits under the MTP. The former employees' position is not persuasive.
 
 
 73
 It is undisputed that both the "Q & A" and "Connections" state explicitly that "[t]he descriptions provided above are designed to summarize and highlight benefits. Complete plan documents, which are currently being finalized, will prevail." (emphasis added). Thus, any inconsistent statements in the interoffice publications cannot support a claim of estoppel. BankAmerica made it clear in these documents that the MTP would contain the controlling language regarding the contemplated benefits. See Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1142 (3rd Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994) (in light of a disclaimer found in interoffice communications, the plan controls).
 
 
 74
 Additionally, under ERISA, a party cannot maintain a claim for equitable estoppel if recovery would contradict the written provisions of the plan. Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir.1992) (citations omitted); Davidian v. Southern Cal. Meat Cutters Union, 859 F.2d 134, 136 (9th Cir.1988). In this action, awarding the former employees, who have received appropriate positions with Key Bank and West One Bank, benefits would contradict the express terms of the plan. The former employees have failed to demonstrate that they are entitled to relief under the doctrine of equitable estoppel. Greany, 973 F.2d at 821; Davidian, 859 F.2d at 136.
 
 G. Attorneys' fees
 
 75
 The former employees request an award of the attorneys' fees for the expenses they incurred in bringing this appeal, pursuant to 29 U.S.C. Sec. 1132(g)(1).[1] The former employees have not prevailed on this appeal. Therefore, we must deny their request for attorneys' fees. See e.g., Arnold v. Arrow Transp. Co. of Del., 926 F.2d 782, 787 (9th Cir.1990) ("Because we find in favor of Arrow on the merits, we deny Arnold's request for attorney's fees.").
 
 
 76
 AFFIRMED.
 
 
 
 *
 Honorable Robert J. Kelleher, Senior United States District Judge, for the Central District of California, sitting by designation
 
 
 [1]
 29 U.S.C. Sec. 1132(g) provides, in pertinent part that:
 (1) In any action under this subchapter ... the court, in its discretion may allow a reasonable attorney's fee and costs of action to either party.