**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-2291

| | | |
|---|---|---|
| George J. Clough, Jr., | * | |
| | * | |
| Plaintiff- | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Voyager Group, Inc., a | * | District Court for the |
| Corporation; Transport Life | * | Eastern District of Missouri. |
| Insurance Company, a Corporation; | * | |
| Primerica Life Insurance Company, | * | |
| formerly known as Massachusetts | * | |
| Indemnity and Life Insurance | * | |
| Company; Travelers Group, Inc., | * | |
| | * | |
| Defendants- | * | |
| Appellees. | * | |

_____

Submitted: January 12, 1998
Filed: March 23, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and ALSOP, District Judge[1].

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

George Clough was an executive in an insurance business which underwent several changes over the years due to corporate reorganization and relocation, and he ultimately had responsibility for downsizing and phasing out the St. Louis operation of the business. He sued appellee companies under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. (ERISA), after they denied his claim for severance benefits. After a trial to the court,[2] judgment was entered in favor of the companies. He appeals from the judgment, and we affirm.

Clough began working for Penn Life Insurance Company (Penn) in 1972 as an executive vice president in its St. Louis division. Penn was a subsidiary of American Can Company (American). Over time the corporate structure changed as Penn merged with Massachusetts Indemnity and Life Insurance Company and then with several other American subsidiaries in an umbrella holding company called PennCorp Group Management. Clough became the chief operating officer of PennCorp and handled the company's credit insurance business, its training programs, oversight of the finance and credit departments, marketing and administration for a car rental insurance division, and all daily operations of some three hundred employees in St. Louis.

In 1987 American began transferring most of the functions of the St. Louis office to another subsidiary, Voyager Group, Inc. (Voyager), in Jacksonville, Florida.[3] In order to encourage the managers and officers in the St. Louis office to remain during the transition, PennCorp established in 1987 a severance award program and "stay bonus" plan that would become payable when a recipient's position was eliminated.

---

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[3]In May of 1988, American was purchased by Commercial Credit and its name was changed to Primerica Corporation. In 1991, Voyager's business was transferred to Transport Life Insurance Company, another Primerica subsidiary. Primerica eventually purchased Travelers Group, Inc. and adopted the name Travelers.

The parties stipulated that Clough was eligible for the PennCorp severance plan at the time it was initiated.  At the beginning of 1988, however, Clough entered into a new two year employment contract with Voyager that included an entitlement to all the benefits the company provided but did not mention any predecessor company. In June 1990 he entered into a second employment contract with Voyager for a five year term.  Neither contract mentioned the 1987 severance plan, and neither Clough nor Voyager's agent, Gary Pridgen, brought up the plan during their negotiations.

Under Clough's second employment contract his responsibilities and salary gradually decreased as his numerous duties began to be shifted to Jim Moore in Ft. Worth, Texas and to other Voyager employees elsewhere.  Near the end of the five year contract term, all of Clough's duties had been shifted to other employees and he came to the office only two days a week and had no actual responsibilities.  This contract terminated on May 31, 1995 and was not renewed.  On August 8, 1995, Clough sent a letter to Transport Life Insurance Company, which had meanwhile taken up Voyager's business, requesting severance benefits under the 1987 plan.  Transport replied with a denial letter stating that his employment contracts had been intended to supersede the earlier severance plan.

Clough then brought this suit against all the companies in his employment line.  The parties presented a stipulation to the district court which also heard additional evidence before it determined that Clough was not entitled to severance benefits under the 1987 plan.  The court found that Clough never became eligible for those benefits because his job was never eliminated and his employment contracts with Voyager were intended to supersede his eligibility for the plan.  Clough was the only PennCorp carryover employee who received such contracts, and they did not refer to the severance plan.  Moreover, during his seven years of continued employment Clough never asserted that he was entitled to payments under the plan, nor did he request certification from the company that he was.  Both contracts also had integration clauses

stating that they expressed the full agreement of the parties as to their rights and obligations.

The district court's factual findings in this ERISA case are reviewed for clear error and its legal conclusions are reviewed de novo. Donatelli v. Home Insurance Co., 992 F.2d 763, 765 (8th Cir. 1993). Although Clough was covered by the severance plan at the time of its creation as agreed in the parties' stipulation, under the plan entitlement to payment did not arise until the employee's position was eliminated. The district court specifically found that Clough's position was never eliminated, but that his duties were shifted to Jim Moore and other employees. His employment contract provided for a gradual decrease during the transition period in both annual salary (from $162,000 the first two years to $129,600 the third year and $97,200 for the last two years) and responsibility (his required work days decreased to four days a week, then three, and finally two). At the time Voyager took control of PennCorp, Clough had circulated a memo to employees eligible for the 1987 severance plan which stated that if their positions were eliminated, severance benefits would accrue "at the time such a change becomes effective." This suggests not only that eligible employees had no enforceable right to benefits under the 1987 package prior to elimination of their positions, but also that Clough was well aware of that fact.

Clough remained employed with Voyager and its successor Transport for seven years to help familiarize the new officials with the existing operation, its local contacts, and the employees who would remain involved in the work. A severance benefit plan does not vest while an employee continues to work for the creator of a benefit plan or for its successor in comparable employment. Parker v. Bankamerica Corp., 50 F.3d 757, 766-67 (9th Cir. 1995); Harper v. R.H. Macy, & Co., Inc., 920 F.2d 544, 545-46 (8th Cir. 1990). Clough testified at trial that he was retained because he was, "the most knowledgeable in it [sic] I knew most of the customers...they needed someone who would hold the hands, if you like, of the brokers and agents so that the business was moved smoothly." Clough also testified that in the final phases of his second contract

with Voyager, his primary task was introducing Moore to the customers in the St. Louis area so Moore could assume Clough's former duties. By the beginning of 1994, Clough's only service to the company was consulting with its lawyers about lawsuits involving files with which he was familiar. As of 1995 he had no employees reporting to him and no duties to discharge. Severance benefits under the 1987 plan never vested in Clough because his position was never eliminated. Schunholz v. Long Island Jewish Medical Center, 87 F.3d 72, 77 (2nd Cir. 1996); Anderson v. John Morrell & Co., 830 F.2d 872, 877 (8th Cir. 1987).

Clough argues that his continued eligibility for benefits under the 1987 plan is demonstrated by paragraph six of his 1990 contract which stated that he was entitled to participate in all benefit programs of "the company" (defined elsewhere in the contract as Voyager). Gary Pridgen, who negotiated the contracts with Clough, testified that the purpose of the contracts was to phase Clough out of the business gradually and that the severance plan was never considered by Voyager and never raised by Clough. Paragraph six only refers to benefit programs of Voyager and does not show that Clough is entitled to benefits under the 1987 plan. The paragraph also specifically provides that it is subject to paragraph four which spells out the gradual reduction of Clough's duties and compensation.

Clough's contracts with Voyager do not show any clear intent that he be eligible for payments under the 1987 severance plan drawn up by PennCorp. They provided for his continuing employment with ensured compensation while he facilitated the corporate transition. This type of agreement was not reached with any other employee originally eligible under the plan. Seven other individuals still employed in the business inquired in 1991 about their continued eligibility for the 1987 severance plan, and their eligibility was confirmed in a memo from Moore. Clough was not included in the names of the eligible employees, but he was copied on the memo and never objected to not being included and never suggested to Moore that he should have been.

Based on this record, the district court did not err in concluding that Clough was not entitled to severance benefits under the 1987 PennCorp plan. The judgment is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.