5 F.Supp.2d 887 (1998)
Sandra HENSLEY; John Wiest, Jr., Kate Burnham; and Donna Hohnstein; on behalf of themselves and all others similarly situated, Plaintiffs,
v.
NORTHWEST PERMANENTE P.C. RETIREMENT PLAN AND TRUST, a defined contribution pension plan; et al, Defendants.
No. CV-96-1166-ST.
United States District Court, D. Oregon.
April 24, 1998.
*888 *889 Roland F. Banks, Margaret Ann Hoffman, Linda M. Vierra, Schwabe, Williamson & Wyatt, Portland, OR, for Plaintiffs.
Scott E. Crawford, John Victor Acosta, Stoel Rives, Portland, OR, for Defendants.

OPINION
STEWART, United States Magistrate Judge.

INTRODUCTION
This is a class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). Plaintiffs are nurse practitioners or physician assistants. On behalf of themselves and the class of similarly situated individuals, plaintiffs allege that they are employed by Northwest Permanente, P.C. ("NWP") and have satisfied all eligibility requirements of, and therefore are entitled to participate in, the Northwest Permanente P.C. Retirement Plan and Trust ("NWP Plan") and the Permanente Physicians Retirement Plan for Northwest Permanente P.C. ("PPR Plan"). The plan administrators have decided that plaintiffs are not employees of NWP and therefore are not eligible to participate in the NWP Plan or the PPR Plan. The Amended Complaint, filed on January 28, 1997, seeks a declaratory judgment and injunctive relief to include plaintiffs and class members as participants in the NWP Plan and the PPR Plan with accrued benefits therein.
Two motions are pending: (1) defendants' Motion for Determination of Standard of Review (docket # 85) and (2) plaintiffs' Motion to Compel Discovery (docket # 97-1). These motions arise out of plaintiffs' contention that due to a conflict of interest by the plan administrators, this court should exercise de novo review of the plan administrators' eligibility decision, rather than employing the deferential arbitrary and capricious standard of review.
All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c).

BACKGROUND

I. Nature of Plaintiffs' Claims

According to the limited background presented by the parties with their motions, plaintiffs are nurse practitioners and physician assistants who work at Kaiser Permanente facilities. It appears that Kaiser Permanente has established two separate and distinct companies for different types of employees. One company, NWP, pays wages, retirement, and other benefits to physicians and other highly paid employees, while the other company, Kaiser Foundation Health Plan of the Northwest ("KFHP"), pays wages, retirement and health benefits to plaintiffs and other lesser paid health care service employees. Although plaintiffs are paid by and receive their retirement and health benefits through KFHP, they believe that they should be regarded as employees of NWP and therefore eligible to receive the higher retirement and other employer-provided benefits under the NWP Plan and the PPR Plan. Plaintiffs are challenging the decisions *890 of the Administrative Committees of the NWP Plan and the PPR Plan which denied plaintiffs' claims. The denials were based in part on a 1984 private ruling by the Internal Revenue Service determining that NWP need not include employees of KFHP because they are not "leased employees."
The NWP Plan is a defined contribution plan administered by a 10 member committee ("NWP Committee") consisting primarily of NWP physicians. Seven of them own a single share of NWP stock, as do most (if not all) of the other 440 or so share owners. The three directors who presently do not own stock (because they are retired) apparently used to own stock since they were physicians at NWP for many years and each physician employed by NWP owns one share of stock.
The PPR Plan is a defined benefit plan administered by a 10 member committee ("PPR Plan Committee") comprised of physicians and others employed by KFHP. None of the current PPR Plan members is an employee or shareholder of NWP.

II. Procedural Background

Plaintiffs issued their second request for production of documents and second set of interrogatories to defendants on June 5, 1997. Defendants objected, and on July 14, 1997, filed a motion to determine that the arbitrary and capricious standard of review applies with respect to this court's review of the plan administrators' eligibility decisions. On July 25, 1997, at a scheduling conference, the court stayed defendants' motion until after completion of discovery and instructed counsel to confer as to what, if any, discovery could be agreed upon. Counsel were unable to agree and plaintiffs issued additional discovery requests to which defendants objected.
On November 4, 1997, plaintiffs filed the pending motion to compel defendants to produce documents in response to eight requests for production of documents (Requests Nos. 5, 6, 8, 9, 10, 18, 20 and 22) and Interrogatory No. 15 and to allow them to take the depositions of each member of the Administrative Committees of the plans (a total of 32 depositions). They seek to bifurcate discovery with the court first determining their right to and extent of discovery on the standard of review. In response, defendants object to any discovery pending a decision by the court on the standard of review.
After holding a hearing on January 5, 1998, Magistrate Judge Ashmanskas took both motions under advisement. However, on January 14, 1998, Magistrate Judge Ashmanskas disqualified himself from further involvement in this case and it was reassigned to Magistrate Judge Stewart. Based upon this court's review of the transcript of the January 5, 1998 hearing, the parties' request for additional oral argument is denied as unnecessary.

DISCUSSION

I. Relationship Between the Pending Motions

The two pending motions are inextricably related to one another. As discussed below, the standard of review to some extent defines the scope of permissible discovery, while some discovery may be needed to determine the standard of review.

A. Two Standards of Review

In actions to recover benefits due under an ERISA plan administrator denying benefits, the court employs a de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan vests the administrator with such discretionary authority, a district court may review the administrator's decision only for an abuse of discretion. Id. The term "arbitrary and capricious" also describes this deferential standard of review. See Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 (9th Cir.1990). However, even if a plan gives discretion to an administrator, the court must weigh any conflict of interest that may have influenced the administrator's decision as a "factor in determining whether there is an abuse of discretion." Firestone Tire & Rubber, 489 U.S. at 115, 109 S.Ct. 948.
*891 No deference to the plan administrator is given under de novo review. In contrast, under the arbitrary and capricious standard of review, an administrator's decision "is not arbitrary unless it is `not grounded on any reasonable basis.'" Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1417 (9th Cir.1991) (emphasis in original), quoting Oster v. Barco of Cal. Employees' Retirement Plan, 869 F.2d 1215, 1219 (9th Cir.1988). Also, an arbitrary and capricious standard of review limits the court to consider only the evidence reviewed by the administrator at the time the eligibility decision was made. McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310, 1316 (9th Cir.1994), cert denied 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); Taft v. Equitable Life Assur. Society, 9 F.3d 1469, 1471 (9th Cir. 1993).

B. Determining the Appropriate Standard of Review

Which standard of review applies is dependent primarily upon the terms of the plan. A plan confers discretion when it "includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir.1992), cert denied 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). The authority to determine eligibility for benefits "inherently confers discretion" upon the plan administrator. Snow v. Standard Ins. Co., 87 F.3d 327, 330 (9th Cir.1996). In this regard, an administrator's interpretation of "disputed" terms within a plan's eligibility provisions must "not be disturbed if reasonable." Firestone Tire & Rubber, 489 U.S. at 111, 109 S.Ct. 948.
Each of the plans at issue in this case unambiguously confers substantial discretion on the plan administrator. The NWP Plan provides in § 9.02-1 that the administrator "shall interpret the plan and trust" and "shall have absolute discretion to carry out the responsibilities." Similarly, the PPR Plan provides in § J-6(a) that "[t]he Administrative Committee has full power, authority and discretion to administer the Plan, and to do all things necessary or convenient in connection therewith." In addition, § J-6(b) provides that "[t]he Administrative Committee establishes procedures, rules, regulations, interpretations, computations and actions for determining questions arising in the administration, interpretation, and application of the Plan and shall have sole discretion to interpret the terms of the Plan and to determine eligibility for benefits under the Plan."
However, as previously noted, if a conflict of interest may have influenced the plan administrator's decision, then the court has the discretion to review de novo or with less deference to the plan administrator's decision. Firestone Tire & Rubber, 489 U.S. at 111, 109 S.Ct. 948; Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794, 798 (9th Cir. 1997). The problem is how to incorporate a fiduciary's conflict of interest into the standard of review process. As recognized recently by Magistrate Judge Jelderks, the Ninth Circuit has not been wholly consistent in its approach to this issue:
[V]arious Ninth Circuit panels have charted different paths concerning this issue, as was discussed at length in my prior opinion. Palmer v. University Medical Group, 973 F.Supp. 1179 (D.Or.1997). Some panels assumed that there were certain situations in which the decision maker was inherently conflicted  e.g., when the person deciding whether to award benefits is the insurance company that must pay any benefits that are awarded  and applied a somewhat heightened level of review in such cases. Other panels adopted a burden shifting methodology which requires the claimant to present proof that the decision actually was tainted by the conflict, at which time the burden would shift to the fiduciary to establish that the decision was free of taint. If the fiduciary met that burden, or if the claimant failed to demonstrate that the decision actually was tainted by the conflict, then review would be under the abuse of discretion standard. If the fiduciary failed to refute the evidence of taint, the decision was subject to de novo review.
Palmer v. University Med. Group, 994 F.Supp. 1221, 1232 (D.Or.1998).
*892 To reconcile this inconsistency, Magistrate Judge Jelderks developed a methodology in which the significance of the conflict of interest is dependent upon the type of ERISA decision being reviewed. He noted at least two general types of ERISA cases. In the typical "benefits determination" cases, the issue is an individual beneficiary's right to recover benefits under the plan, which "is usually a matter of interpreting the plan and applying that language to the facts as developed in the administrative record." Palmer v. University Med. Group, 973 F.Supp. 1179, 1189 (D.Or.1997). Another set of ERISA cases deals with "discretionary policy decisions" "often affecting the plan as a whole or a large number of participants" and involving "little, if any, language in the plan governing the matter in question." Id. In the "benefits determination" cases, he concluded that the focus should be on the merits of the decision, rather than upon the motives of the decision maker in order to avoid extensive and costly discovery.
Instead of forcing the plaintiff in a "benefits determination" case to prove that the underlying decision was tainted by a conflict of interest (or requiring the defendant to show the decision was not tainted), the courts should simply acknowledge that in certain situations there is an inherent conflict of interest, e.g., when the decision maker is the insurance company that must pay any benefits awarded. If such a conflict of interest appears to be present, the court still reviews the decision for abuse of discretion  assuming the Plan contains the requisite language conferring discretion upon the plan administrator  but the court's review is a little more searching (depending upon the severity of the conflict) and the court is not as quick to defer to the administrator's discretion.
Id.
Magistrate Judge Jelderks continued to adhere to this methodology even after the Ninth Circuit issued Lang because Lang failed to comment on the conflict between prior Ninth Circuit cases. Palmer, 994 F.Supp. at 1232.
According to Lang, if a fiduciary has a "dual role as both the funding source and the administrator of the Plan, we are faced with an inherent conflict of interest situation, and must take this factor into account." Lang, 125 F.3d at 798. However, the review is still "under the traditional abuse of discretion standard unless it appears that the conflict may have influenced the decision." Id. To show that the conflict may have influenced the decision, a beneficiary "must come forward with `material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.'" Id., quoting Atwood v. Newmont Gold Co., 45 F.3d 1317, 1322 (9th Cir.1995). In that event, the plan must produce evidence that the conflict of interest did not affect its decision to deny benefits. If the plan fails to carry that burden, then review becomes de novo.
In other words, even if a plan administrator has an inherent financial conflict, a beneficiary is required to produce evidence that the administrator's self-interest actually caused a breach of its fiduciary obligations in order to possibly trigger de novo review. Such evidence is not difficult to produce if the administrative record contains evidence of bias or bad faith. For example, in Lang, the beneficiary met her initial burden because the fiduciary gave inconsistent reasons for denying benefits to plaintiff, indicating "that its decision was affected by self-interest." Id at 799. However, aside from considering evidence found in the administrative record, the Ninth Circuit has given no guidance on what evidence will suffice and how a beneficiary can obtain such evidence.

C. Conflict of Interest Analysis

In this case, the nature of the plaintiffs' burden to produce evidence of a conflict of interest and whether plaintiffs have satisfied that burden is the focus of the defendants' pending motion to determine the appropriate standard of review in this case. What discovery plaintiffs may be entitled to obtain on the conflict of interest issue flows from the nature of their burden to produce evidence of a conflict. This is the same question that troubled Magistrate Judge Jelderks *893 in Palmer, namely are plaintiffs in an ERISA case entitled to any discovery pertaining to the conflict of interest issue, and, if so, what is the appropriate scope of that discovery?
This court is persuaded by Magistrate Judge Jelderks' practical approach to this dilemma by differentiating between different types of ERISA cases. Unlike a "benefits determination" case, this case involves a "discretionary policy decision" by the Administrative Committees regarding the definition of "employee." This decision affects the plans as a whole and a large number of participants. Because the plans contain no definition of the term "employee," no objective standard exists against which to measure the decision to exclude plaintiffs from the definition of "employee." Thus, it "might be appropriate to focus upon the administrator's motivations" and "to consider whether the fiduciary's discretionary decision was in fact tainted by a conflict of interest that prevented the fiduciary from acting solely in the interest of the plan beneficiaries." Palmer, 973 F.Supp. at 1189. To establish these facts, it may be necessary to permit limited discovery and supplementation of the record.
Plaintiffs claim that both the NWP Committee and the PPR Plan Committee had two types of serious conflicts of interest evidencing bias and self-interest which are clear breaches of their fiduciary duties to the beneficiaries. The first type of conflict, a pecuniary conflict, arises from the fact that members of the Administrative Committees occupy significant conflicting positions as members, owners, and sponsors of the plans.
Defendants respond that it is insignificant that members of the NWP Committee own NWP stock since each member owns only one share. However, NWP is structured somewhat like a large law firm or accounting firm, with each physician owning one share of the company. During the past five years, the number of NWP shares has fluctuated between roughly 378 and 454. Given the small pool of shares, owning one share may be equivalent to owning a million shares of a large corporation. It is disingenuous for defendants to argue that the ownership of one share is a "minute portion of the stock."
Moreover, these members each own one share because they are physicians, as are most (if not all) of the other 440 or so share owners. This type of ownership represents a clash between the physicians and the plaintiffs who are physician assistants and nurse practitioners. It is reasonable to assume that the physicians on the Administrative Committee are essentially representing all of the physicians who are the share owners of NWP and will vote accordingly.
Plaintiffs argue that this inherent conflict of interest coupled with a substantial and immediate financial liability for NWP, the sponsor of the plans, creates a positive motivation to exclude the class members from the plans. According to plaintiffs' actuary, NWP would have an approximate annual contribution to the plans for just 50 class members of an estimated $560,000. Affidavit of Ed Heintzberger, ¶ 6. Based upon similar census figures for the remaining 102 class members, NWP's total annual liability for all class members would be at least three times that much, or $1,680,000. Id, ¶¶ 7-8. NWP's potential liability for past contributions, lost investment earning, and accrued benefits totals $6,200,000 for 50 class members and likely three times that amount for the remaining 102 class members. Id. These are substantial potential liabilities.
With respect to the PPR Plan, defendants point out that none of the current PPR Plan Committee members is an employee or shareholder of NWP. Because they are affiliated with KFHP, defendants argue that these members would have a potential or apparent incentive for NWP to fund plaintiffs' benefits, thereby saving KFHP money. However, it appears that the PPR Plan Committee members are all management representatives, not members of the plaintiff class. To the extent plaintiffs argue that this is simply a scheme set up by Kaiser Permanente to form two companies in order to minimize benefit costs, these members are beholden to Kaiser Permanente, not to the plaintiffs or to the alleged shell company as an "independent" entity.
Plaintiffs also believe that the Administrative Committees were motivated to exclude *894 class members from the plans based on a systemic conflict of interest: That interest arises from other similarly situated Kaiser Permanente health professionals in similarly situated plans in other states. Plaintiffs contend that some Administrative Committee members for the defined benefits plan are also on other Administrative Committees in other NWP Plans. To prevent a snowball effect in other plans on a nationwide scale, plaintiffs believe that the Administrative Committees were motivated to preserve the status quo.
These alleged conflicts of interest go well beyond the inherent financial conflict of interest arising when the administrator is the same entity that must pay any benefits awarded. To determine whether these alleged conflicts of interest will bear fruit and ripen into proof of actual conflicts of interest, plaintiffs are entitled to some limited discovery to seek probative evidence to support their allegations. With that principle in mind, this court turns first to plaintiffs' motion to compel.

II. Motion to Compel

Plaintiffs' motion to compel defendants to produce documents, answer an interrogatory, and take approximately 32 depositions is expressly limited to discovery concerning the standard of review. In particular, plaintiffs seek evidence that pecuniary and systemic conflicts of interest tainted the decisions by the Administrative Committees and that this court should apply a de novo standard of review.
Defendants argue that until plaintiffs come forward with evidence of a substantial conflict of interest, the arbitrary and capricious standard of review applies to plaintiffs' claim for a denial of benefits. Since the record shows nothing more than the indirect potential conflict that exists in all comparable ERISA cases where the administrative committee is comprised in part of persons employed by the plan sponsor, defendants urge that plaintiffs' motion should be denied in its entirety.
Despite this intransigent position, defendants have produced documents relating to the standard of review issue and, in fact, only object to responding to some document requests and the interrogatory because they relate to the merits of plaintiffs' claims. Thus, for the purposes of the motion to compel, the dispute regarding documents and the interrogatory are easy to resolve.

A. Requests for Documents

With respect to the requests for documents, defendants respond that they have produced all non-privileged documents relevant to the standard of review issue and that the only information withheld is protected by the attorney-client privilege and work product doctrine or is related to the merits. In particular, they have produced over 1600 pages of documents, including the entire administrative record.
A review of plaintiffs' requests reveals that plaintiffs do indeed seek many documents that appear to pertain solely to the merits of this case, namely agreements between NWP and other Kaiser Permanente organizations relating to performance of services, use of facilities and/or billing for services of health care professionals to third party payors (Request No. 5), documents pertaining to claims of eligibility as participants under the NWP Plan (Request No. 6), lists of all job titles of all persons covered by the NWP Plan (which defendants have produced to assist plaintiffs in identifying and providing notice of this action to all potential class members) (Request No. 8), directories displayed in the Portland clinics or offices (including photos and credentials of all health care professionals assigned to many of the subject offices) (Request No. 9), and lists of all employees of NWP for the last three years (Request No. 10). Since these documents do not relate to the standard of review issue, but instead solely to whether or not plaintiffs and others should be deemed employees of NWP, plaintiffs' motion to compel their production is denied. The motion may be renewed if this court's determination as to the applicable the standard of review opens the door to supplementing the administrative record.
The three remaining document requests (Requests Nos. 18, 20, and 22) are more *895 difficult to characterize since they include documents that potentially relate both to the standard of review and the merits. In those requests, plaintiffs seek documents containing information about the employee status of plaintiffs and others, as well as the decision process resulting in denial of plaintiffs' eligibility. These documents could lead to discovery of the reasons and motives for the Administrative Committees' decisions. However, defendants' response indicates that to the extent that any of these requested documents relate both to the merits and to the standard of review or conflict of interest issues, they have produced all such non-privileged documents.[1] Based on defendants' representation, plaintiffs' motion to compel their production is denied with leave to renew after determination of the appropriate standard of review.

B. Interrogatory

Interrogatory No. 15 seeks a list of the complete annual earnings history for each and every member of the defendant class. Defendants contend that this information has no relevance to the standard of review. This court agrees. Thus, plaintiffs' motion to compel an answer to this interrogatory is denied, with leave to renew after determination of the appropriate standard of review.

C. Depositions

Recognizing the burdensome nature of 32 depositions, plaintiffs have agreed to narrow their request to only four depositions with the right to take additional depositions, if necessary. These four people are the two Committee Chairpersons for the NWP Plan and the PPR Plan plus Ann Stenzel and Ellen Cantor. Plaintiffs argue that they need these depositions to learn what was the decision process of the plans, what influenced the committee members, and whether or not a pecuniary and/or systemic interest played a role.
Since this discovery is outside of the administrative record, defendants strenuously object. Defendants have refused to accede to plaintiffs' request for four depositions, characterizing it as no more than a fishing expedition, but have offered to produce a representative from each of the plans to be deposed on the conflict of interest issue if plaintiffs can come forward with some probative evidence that a substantial conflict exists.
Initially, this court notes that defendants' position with respect to depositions is contrary to their position with respect to producing documents. While defendants are willing to produce documents outside the administrative record pertaining to the standard of review, they are unwilling to agree to two or four depositions pertaining to the standard of review. This is not only an inconsistent, but also an illogical position. After all, if plaintiffs already had probative evidence of a substantial conflict of interest, they would not need the requested discovery.
In any event, because this court has concluded that some limited discovery is appropriate concerning the motivation behind the decision to exclude plaintiffs from the plans, plaintiffs are entitled to take the four depositions which they seek, but limited solely to the conflict of interest issue. Whether any additional depositions are warranted will depend upon what information is obtained from these four depositions.

III. Motion for Determination of the Standard of Review

This court has concluded that plaintiffs are entitled to limited discovery concerning the alleged conflicts of interest in order for this court to determine the applicable standard of review. Therefore, it is premature to decide defendants' motion seeking to apply the arbitrary and capricious standard of review until plaintiffs have had the opportunity to discover and present evidence, if any, beyond the mere fact of an apparent conflict that the self-interest of the Administrative Committees caused a breach of their fiduciary obligations to plaintiffs.
Accordingly, defendants' motion is denied as premature, with leave to renew after discovery *896 is completed concerning the conflict of interest issue.

ORDER
For the reasons set forth in the accompanying Opinion:
1. Plaintiffs' Motion to Compel Discovery (docket # 97-1) is GRANTED as to allowing the four requested depositions on the conflict of interest issue and DENIED with leave to renew in all other respects;
2. Plaintiffs' Motion to Extend the Discovery Deadlines (docket # 97-2) is GRANTED. The deadline for completing discovery and filing dispositive motions is extended for 90 days to July 24, 1998 and the date for filing the pretrial order is extended to August 24, 1998. In addition, this court will hold a scheduling conference by telephone at 10:00 a.m. on Friday, June 26, 1998. The court will place the call; and
3. Defendants' Motion for Determination of Standard of Review (docket # 85) is DENIED with leave to renew after plaintiffs complete discovery on the conflict of interest issue.
NOTES
[1] Of course, if defendants have not already produced these documents that pertain to the conflict of interest issue, then they should do so immediately.