**Shingo FUTAMURA, Personal Representative of the Estate of Robert G. FUTAMURA, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, a foreign corporation, Defendant.**

**No. C02–2509Z.**

United States District Court,
W.D. Washington,
At Seattle.

Feb. 17, 2004.

D. Jeffrey Burnham, Heath S. Fox, Johnson Graffe Keay Moniz & Wick (SEA), Seattle, WA, for Plaintiff.

D. Michael Reilly, Robert J. Guite, Lane Powell Spears Lubersky, Seattle, WA, for Defendant.

## ORDER

ZILLY, District Judge.

### BACKGROUND

On January 9, 2001, Robert Futamura visited a medical physician, Dr. Lammert, complaining of a one to two year chronic cough. Hong Decl., docket no. 33, Ex. C. Dr. Lammert determined that Mr. Futamura's cough was likely caused by allergies that had affected Mr. Futamura in the past. *Id.*

On February 7, 2001, Mr. Futamura started a new job at Sakson & Taylor, which provided him with coverage under a long-term disability insurance policy issued and administered by UNUM Life Insurance Policy of America ("UNUM"). The policy contained the following provisions:

When making a benefits determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your . . . pre-existing condition. You have a preexisting condition for sickness or injury if:

— you receive medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; or you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage; and

— your disability begins in the first 12 months after your effective date of coverage.

Hong Decl., docket no. 33, Ex. A, U/A 0751, 0761–0762. The preexisting condition exclusion extended back to November 7, 2000, thereby encompassing Mr. Futamura's January 2001 visit to Dr. Lammert.

On March 8, 2001, Mr. Futamura returned to Dr. Lammert for a follow-up visit. Lammert Decl., docket no. 38, Ex. B. His cough was slightly worse, and he reported additional symptoms—pain in the left buttocks, radiating pain down the left side, inability to play soccer because of pain. *Id.* Dr. Lammert ordered a diagnostic X-ray of Mr. Futamura's chest that revealed an irregular mass on the perihilar region of his lung. Subsequent testing confirmed that Mr. Futamura was suffering from non-small cell lung cancer. Hong Decl., docket no. 33, Ex. D. Mr. Futamura's cancer was advanced and aggressive, which led him to make a claim for disability under the UNUM policy. *Id.* at Ex. E. Mr. Futamura completed the claim form in

May 2001. *Id.* Robert Futamura died on March 24, 2002.

Mr. Futamura's claim was initially reviewed by Nurse Ruth Brown on April 2, 2002, approximately one week after his death. Fox Decl., docket no. 37, Ex. 2. Nurse Brown was not aware of Mr. Futamura's earlier visit to Dr. Lammert, and found that Mr. Futamura did not have a preexisting condition under the terms of the policy. *Id.* Mr. Futamura's claim was later reviewed by Dr. Wanda Lopez on April 17, 2002. *Id.* at Ex. 6. Unlike Nurse Brown, Dr. Lopez was aware of the January 10, 2001 visit to Dr. Lammert. *Id.* Based on that visit, Dr. Lopez concluded on a more likely than not basis that Mr. Futamura was seen for symptoms related to his lung cancer diagnosis within the preexisting condition period. *Id.* Dr. Lopez made the following findings:

Clmt was seen by Dr. Lambert c/o of 1–2 years history of chronic cough with productive white mucus. On physical exam, he was found to have breath sounds 3/4 with no wheezes or ronch and significant cough with forced expiration. A [Pulmonary Function Test] was obtained which was found to be negative. He was treated as a case of chronic rhinitis and allergies. He was seen on a follow up visit on March 8, 2001, with similar complains of worsening and persistent chronic cough. Chest x-rays done on that day showed an irregular mass of 6x8 cm in size in the anterior right perihilar region. A follow up chest ct done on March 15, 2001 confirmed the presence of a mass. A bronchoscopy done later on confirmed [sic] the diagnosis of NSCLCA.

Conclusion, Clmt was seen during the pre-x period complaining of chronic cough for one to two years duration. Further investigation of these symptoms a month later led to the diagnosis of

lung cancer which is the same condition for which the clmt was seeking disability. This is a typical presentation for such an advanced stage of cancer to present with long standing history of chronic cough. Therefore, it is more likely than not that the symptoms that the clmt experience during the pre-x and for which he seek medical care whre [sic] related to the lung cancer.

Fox Decl., docket no. 37, Ex. 6.

UNUM sent a letter to Mr. Futamura's surviving family the next day, April 18, posthumously denying his claim based on the preexisting claim clause of the policy. *Id.,* Ex. 3. UNUM concluded that, based on its review of the medical records, Mr. Futamura had symptoms of cancer during the preexisting period and "therefore received medical treatment, consultation, and care services including diagnostic measures for a condition which he is now claiming disability." *Id.,* Ex. 3, pg. 2.

Mr. Futamura's family appealed UNUM's denial of benefits, which was denied on August 16, 2002. *Id.* at Ex. 4. UNUM reiterated that Mr. Futamura had complained of a chronic cough for one to two years, and that investigation of these symptoms eventually "led to the diagnosis of non small cell lung cancer." *Id.,* Ex. 4, pg. 2. UNUM affirmed the conclusion that the symptoms for which "Mr. Futamura sought and received treatment during the pre-existing period were related to the lung cancer." *Id.,* Ex. 4, pg. 2. This action was filed by Mr. Futamura's estate to recover the disability benefits under ERISA.

*DISCUSSION*

■ Defendant's summary judgment motion cannot proceed without first determining the applicable standard of review. The disability benefits policy gives UNUM the discretion to determine eligibility, and courts are generally required to review such policies under the abuse of discretion standard. *See Firestone Tire Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (where an ERISA plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court must apply the deferential "abuse of discretion" standard of review). However, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion. *Id.* at 115, 109 S.Ct. 948.

The Ninth Circuit has interpreted *Firestone* to suggest that when an insurance company administers a plan and simultaneously profits by denial of coverage, there is an apparent conflict of interest. *Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130, 1145 (9th Cir. 1999), overruled on other grounds by *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). However, the presence of an apparent conflict does not automatically heighten the standard of review. *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 943 (9th Cir.1999). Only serious conflicts heighten the scrutiny. *Id.*

■ To establish a serious conflict, the plaintiff must produce "material, probative evidence tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1323 (9th Cir.1995). "Evidence of 'personal motivations,' 'improper acts,' bias or bad faith are ... sufficient to meet this burden." *Thomas v. Silgan Containers Corp.,* 217 F.3d 846, 2000 WL 536523, at *1 (9th Cir.2000) (citing *Atwood,* 45 F.3d at 1323;

*Hensley v. Northwest Permanente P.C. Retirement Plan and Trust,* 5 F.Supp.2d 887, 892 (D.Or.1998)). If the plaintiff satisfies this burden, and the defendant fails to show "that the conflict of interest did not affect the decision to deny benefits," the decision to deny benefits is reviewed *de novo.* *Id.*

## A. Conflict of Interest

UNUM has an "apparent" conflict because it both administers the plan and serves as the funding source for the benefits. Plaintiff contends that UNUM's conflict of interest influenced its decision to deny benefits. Specifically, Plaintiff argues that UNUM violated its own policies and procedures, provided financial incentives to deny claims, and pressured Dr. Lopez to "improve her numbers." Pl. Supp. Opp., docket no. 52, pg. 3–6.

### 1. Policies and Procedures

First, Plaintiff argues that Dr. Lopez either ignored or was unaware of UNUM's policies regarding the interpretation of claims when she evaluated Plaintiff's claim. Plaintiff contends that Dr. Lopez testified that there was no policy, manual or written set of guidelines that she could follow when reviewing a file. Dr. Lopez explained that "every single person behaves differently to any kind of disease process," that she uses the Presley Reid guidelines, that she reviews each case independently with the guidelines, and that she does what she feels is appropriate for each particular case. Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 14, lns. 20–25; pg. 15, lns. 1–2, 15–19). Plaintiff then asked whether there was "a manual or something of that nature that you can pull off the shelf to be trained on or to review before you look at a claim," and Dr. Lopez said that there was not. *Id.,* Ex. B (Lopez Dep., pg. 15, lns. 15–19).

Plaintiff cites UNUM documents and alleges that the contents contradict Dr. Lopez's testimony. UNUM's Risk Management Reference states that

"there must be a clear and direct relationship between the sickness or injury treated during the pre-existing period and that causing the insured to be become disabled. A 'possible' or 'hypothetical' relationship is not a sufficient basis for denial of a claim."

Fox Decl., docket no. 53, Ex. B.

However, this information relates to the denial of a claim, not to the determination of whether the sickness, injury, or disease existed during the exclusionary period. Dr. Lopez testified that physicians at UNUM, such as herself, were not involved in claim management and were "there just to review medical documentation and render an opinion based on their knowledge and their expertise." Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 12, lns. 23–25; pg. 13, lns. 1–3). Dr. Lopez further explained that "[h]ow the claim examiners or customer care specialists use this information is only up to them." *Id.,* Ex. B (Lopez Dep., pg. 23, ln. 25; pg. 24, lns. 1–2). In the medical report, Dr. Lopez concluded that "more likely than not the symptoms that [Plaintiff] experience during the pre-x and for which he seek medical care whre [sic] related to the lung cancer." Hong Decl., docket no. 33, Ex. D. Dr. Lopez only reviewed the medical record; she did not make the decision to deny the claim.

Plaintiff next argues that UNUM's decision to deny benefits is not supported by medical evidence and that Dr. Lopez's review lacks "observation, medical authority or medical evidence." Pl. Supp. Opp., docket no. 52, pg. 4, lns. 3–5. Under UNUM's policies, the following elements must be established when determining if a pre-existing condition exclusion applies:

(1) the medical condition must have existed "on or before the effective date of insurance coverage"; (2) the condition must have "manifested itself"; (3) during the exclusionary period; and (4) the condition must be connected to the disability." Fox Decl., docket no. 53, Ex. D.

When conducting a pre-existing condition investigation, UNUM's policies and procedure require that claimant's complete health history be acquired from each applicable provider. Fox Decl., docket no. 53, Ex. E, G. The medical information obtained "should include a period of time at least three months prior to the pre-existing time period to the present." Fox. Decl., docket no. 53, Ex. G, ¶ 5. If the medical history file is insufficient to complete the pre-existing analysis, other options for obtaining the required information should be considered, such as calling the treating provider. Id., ¶ 6. A "thorough, fair and objective evaluation" is required for each claim." Fox. Decl., docket no. 53, Ex. H. The Customer Care Center Claims Manual states that the "claims professionals will gather all appropriate and necessary information to evaluate every claim thoroughly, and make fair, factual and contractually-based claims decisions." Id., Ex. I.

Plaintiff argues that Dr. Lopez's review fails to consider the observations made by Plaintiff's treating physician regarding Plaintiff's allergies and post-nasal drip. Plaintiff also contends that Dr. Lopez should have contacted his treating providers. UNUM argues that it had sufficient information to make a decision, that it did not need additional medical information, and that it was not necessary to contact Plaintiff's treating physicians. *See Booton v. Lockheed Medical Benefit Plan,* 110 F.3d 1461, 1463 (9th Cir.1997) ("if the plan administrators believe that more information is needed to make a reasonable decision, they must ask for it").[1]

On January 9, 2001, Dr. Lammert examined Plaintiff. Hong Decl., docket no. 33, Ex. C, pg. 1. Dr. Lammert's notes indicate that Plaintiff complained of "a one to two year history of chronic cough," which produced a clear mucus, and had a history of seasonal allergies. *Id.* Plaintiff denied having "chronic nasal congestion or post-nasal drip," but was a "frequent throat clearer." *Id.* Plaintiff had a history of allergic rhinitis and a chronic cough. *Id.* Dr. Lammert noted that Plaintiff's "breath sounds [were] 3/4 with no wheezes or rhonchi noted" and that he had a "[s]ignificant cough with forced expiration." *Id.,* pg. 2. Dr. Lammert also conducted an allergy skin test. *Id.* Dr. Lammert concluded that Plaintiff suffered from "[s]easonal and perennial allergic rhinitis." *Id.*

Dr. Lopez reviewed all of this information, including Dr. Lammert's finding of "chronic rhinitis and allergies." Hong Decl., docket no. 33, Ex. D. Dr. Lopez also noted that chest x-rays taken later showed an irregular mass of 6x8 centimeters on his lung, which led to the diagnosis of lung cancer. *Id.* Dr. Lopez found that Plaintiff's symptoms during the exclusionary period were "a typical presentation for such an advanced stage of cancer to present with long standing history of chronic cough." *Id.* Dr. Lopez testified that the "usual presentation" for lung cancer is a chronic cough and that Mr. Futamura's

---

1. Dr. Lopez stated that she would occasionally contact a claimant's treating physician if she "couldn't understand something written in the record, if something needed to be clarified, if some information was missing from the record and [she] found that information was completely pertinent to make a whole evaluation of the case, if that was missing, then she would contact the physician." Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 30, lns. 5–14).

cancer was "in such an advanced state that it went to the bone, to the liver, and to the brain," which is something that does not "happen in a few days or a month." Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 46; lns. 3–19). Dr. Lopez further testified that "the information [she] had was enough to . . . draw a conclusion." *Id.*, (Lopez Dep., pg. 30, lns. 18–22). There is nothing to suggest that Dr. Lopez did not follow UNUM's policies and procedures or needed more information.

Plaintiff has failed to show that UNUM violated its policies and procedures when it reviewed Plaintiff's claim.[2]

### 2. Financial Incentives

Plaintiff next argues that UNUM used financial incentives to encourage employees to deny claims and improve UNUM's bottom line. Plaintiff submits a copy of UNUM's Performance Recognition Program, which states the UNUM seeks to recognize "valuable employee contributions" to "encourage employees to repeat or continue exception results." Fox Decl., docket no. 53, Ex. J. UNUM also granted eligible employees stock options in the company. *Id.*, Ex. K. Eligible full-time employees were awarded options for 150 shares of common stock, with an exercise price of $13.7188. *Id.* UNUM employees were also provided bonuses through its Management Incentive Compensation Plan, which enabled employees "to earn annual incentive based upon both corporate and individual performance." *Id.*, Ex. L. The plan was "structured to focus [UNUM's] efforts on attaining [its] financial and business objectives." *Id.* The plan encouraged employees to set "specific,

quantifiable, and measurable" goals and a performance plan. *Id.*

Dr. Lopez testified that she was a medical consultant, not a claims decision-maker, Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 12, lns. 23–25; pg. 13, lns. 1–3), and that "[h]ow the claim examiners or customer care specialists use this information is only up to them." *Id.*, Ex. B (Lopez Dep., pg. 23, ln. 25; pg. 24, lns. 1–2). Plaintiff has submitted evidence that UNUM tracked physician performance and were offered " 'performance' based bonuses if they are able to facilitate high rates of claim denials." Nee Supp. Decl., docket no. 54, ¶ 9. Dr. Lopez testified that she had not been pressured to close a claim or alter her opinions. Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 23, lns 16–24; pg. 62, lns 19–25, pg. 63, lns. 1–14).

### a. Nee Supplemental Declaration and Motion to Strike

 Plaintiff relies on the supplemental declaration of Linda Nee, docket no. 54. Ms. Nee is a former employee of UNUM who worked in UNUM's Portland, Maine office as a customer care specialist and bases her declaration upon her "observations, experiences, and job activities during [her] employment with UNUM." Nee Supp. Decl., docket no. 54, ¶ 3. It is undisputed that Ms. Nee has no personal knowledge of any facts regarding Mr. Futamura's claim. Ms. Nee states that UNUM "sets financial targets for the closure of claims" and that a "claim's handler's failure to meet these goals negatively affected his/her performance rating . . . and were

---

**2.** Plaintiff argues that Dr. Lopez failed to obtain the third page of Dr. Lammert's report from January 9, 2001. Pl. Opp., docket no. 36, pg. 9, ¶ 2. Dr. Lopez testified that she was aware that a third page was missing, but that she had enough information in the two pages to draw a conclusion and that the third page was likely instructions as to when the person was to return to the clinic. Guite Decl., docket no. 45, Ex. B (Lopez Dep., pg. 39, lns. 8–15).

financially penalized." *Id.,* ¶ 8. Ms. Nee also states that UNUM tracks "physician performance by a similar set of metrics to those used for claim handlers and customer care specialists" and that physicians are offered " 'performance' based bonuses if they are able to facilitate high rates of claim denials." *Id.,* ¶ 9. Finally, Ms. Nee claims that, in her experience, incentive bonuses were only awarded to claims handlers "who consistently achieved high reserve reductions." *Id.,* ¶ 11.

UNUM has moved to strike Ms. Nee's supplemental declaration. Def. Supp. Memo, docket no. 56, pg. 2. UNUM contends that Ms. Nee lacks personal knowledge and that she never worked in the office where Plaintiff's claim was handled. However, the statements made by Ms. Nee are general statements about the company, not about Plaintiff's claim. The Court rejects UNUM's arguments and denies the motion to strike. UNUM has only sought to discredit Ms. Nee's testimony and has not asserted that it is based on hearsay. Ms. Nee states that her declaration is based on personal knowledge.

UNUM also argues that Ms. Nee's supplemental declaration should be stricken because it is evidence outside the administrative record. Def. Supp. Memo, docket no. 56, pg. 3. The Court allowed discovery of these documents to determine whether there exists a serious conflict. Accordingly, the Court concludes that the outside evidence relevant to the alleged conflict of interest may be admitted to supplement the record and denies the motion to strike this part of the declaration.

The Court concludes that Ms. Nee's supplemental declaration fails to create a material issue of fact regarding whether UNUM used financial incentives to encourage employees and its physicians to deny claims. Ms. Nee's declaration fails to show that Dr. Lopez's opinion was motivated by financial incentives. Plaintiff has failed to produce evidence to show that Dr. Lopez's opinion and the decision to deny benefits was motivated by UNUM's self-interest or the existence of a serious conflict.

### 3. Pressure on Dr. Lopez

Finally, Plaintiff argues that UNUM pressured Dr. Lopez to "improve her numbers." Plaintiff submits Dr. Lopez's performance reports from UNUM. A 2001 report stated that Dr. Lopez struggled with "tracking metrics and reporting" and that she had "not been effective in leveraging her technical expertise to frontline claims management activities." Fox Decl., docket no. 53, Ex. N, pg. 1. The report stated that she needed to be "more fastidious in follow-through tasks/assignments and in meeting deadlines." *Id.,* pg. 4. Other remarks about Dr. Lopez's performance included her failure to return phone calls, to follow-through with things, to be timely, and to be organized. *Id.,* Ex. O, pg. 19.

In July 2001, Dr. Lopez received a written warning regarding her performance problems. Fox Decl., docket no. 53, Ex. M. The letter expressed concerns that Dr. Lopez was doing "few, if any, file reviews," was not performing administrative duties in a timely manner, including reporting "metrics that make sense in the business context." Fox Decl., docket no. 53, Ex. M, pg. 4, Dr. Lopez was informed that if she did not make satisfactory progress, her employment would be terminated. *Id.,* pg. 6.

This is not evidence that shows that UNUM was pressuring Dr. Lopez to find a pre-existing condition in Plaintiff's case. The performance reports refer to administrative tasks, not "improving her numbers."

#### a. Nee Declaration and Motion to Strike

■ Plaintiff also relies on the supplemental declaration of Linda Nee who states that based on Dr. Lopez's performance scores, she was about to be terminated if her performance did not improve. Nee Supp. Decl., docket no. 54, ¶ 13. Ms. Nee further states that performance was in relation to "total claims denied and total money saved for UNUM." *Id.* UNUM has also moved to strike this portion of the declaration, docket no. 56. The Court strikes paragraph thirteen (13) of Ms. Nee's supplemental declaration, docket no. 54. Ms. Nee is not an expert, did not work in the Human Resources Department of UNUM, and her opinion is not based on her own knowledge.

#### 4. Inconsistent Reasons

Plaintiff argues that UNUM's decision to deny benefits was inconsistent because initially Nurse Brown decided to process the claim. A change in reasoning between an initial and a subsequent denial of benefits can evidence an actual conflict interest. *Lang*, 125 F.3d 794, 798 (9th Cir.1997). The Court rejects Plaintiff's argument. When Nurse Brown reviewed the claim, she was unaware of Mr. Futamura's earlier visit to Dr. Lammert. Fox Decl., docket no. 37, Ex. 2. Nurse Brown stated that "[t]here were no medical reports during the pre-ex period, located in the file." *Id.* Later, Nurse Brown reviewed the medical records from January 9, 2001 through March 8, 2001, and recommended that the file be referred to a physician because of the presence of, and treatment for, the chronic cough during the exclusionary period. Guite Decl., docket no. 45, Ex. A (Brown Dep., Ex. 2, U/A 0116). The Court concludes that UNUM did not provide in-

consistent interpretations of the policy. The reason for the denial was based on facts that were previously unknown. *See Moser v. Trans–General Life & Casualty Group, Inc.*, 232 F.3d 895, 2000 WL 1028703, at *1 (9th Cir.2000) (finding no conflict of interest where the new reason for denying benefits was "based on new information not previously provided").

### B. Abuse of Discretion

■ The Court finds that the proper standard of review is abuse of discretion and must affirm the decision to deny benefits if the decision was "based upon a reasonable interpretation of the plan's terms and was made in good faith." *Bendixen*, 185 F.3d at 944. ERISA plan administrators abuse their discretion by rendering decisions without an explanation, by construing the terms of the policy in a way that conflicts with the policy's plain language, or by relying on "clearly erroneous findings of fact in making benefit determinations." *Id.* The mere presence of contradictory evidence does not necessarily amount to an abuse of discretion. *Id.*

■ Plaintiff has offered no admissible evidence that UNUM's interpretation of the preexisting condition clause in the policy is not reasonable. Accordingly, UNUM's interpretation was not an abuse of discretion. *See Kracht v. Aalfs Assoc. H.C.P.*, 905 F.Supp. 604, 614 (N.D.Iowa 1995) (holding that receiving advice or treatment during the exclusionary period for a condition "which proves to be the same condition the claimant seeks benefits for" qualifies as a preexisting condition regardless of whether there was an accurate diagnosis). *Accord Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429, 432 (7th Cir.1994) (coverage properly denied where symptoms manifested but

the condition undiagnosed prior to the effective date of coverage);[3] *Kirk v. Provident Life and Accident Ins. Co.*, 942 F.2d 504, 506 (8th Cir.1991) (same).

During oral argument, Plaintiff relied heavily on *Pitcher v. Principal Mutual Life Ins. Co.*, 93 F.3d 407 (7th Cir.1996). *Pitcher* does not support Plaintiff's position. In *Pitcher*, the court was faced with the question of whether the terms of the policy precluded coverage, and the court construed the meaning of the insurance policy "in an ordinary and popular sense as would a person of average intelligence and experience." 93 F.3d at 412–13. However, because UNUM is entitled to "deference ordinarily due an administrator vested with discretion to interpret the [policy]," the Court may not apply the rules typically applied to insurance policies and must uphold UNUM's reasonable interpretation of the policy. *See Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 799 (9th Cir.1997).

### C. UNUM's Motion to Strike, docket no. 44

UNUM has also moved to strike the declarations of Dr. Joyce Lammert and Shingo Futamura, docket nos. 38 and 39, and Ms. Nee's first declaration, docket no. 40.

#### 1. Futamura and Lammert Declarations

■ Reports and evidence that was not before the plan administrator at the time benefits were denied may not be considered by this Court on review. *Bendixen*, 185 F.3d at 944. The declarations by Dr. Lammert and Shingo Futamura relate to Mr. Futamura's health and medical history and were created in October 2003. Accordingly, because this is evidence outside the administrative record, the Court GRANTS UNUM's motion to strike these declarations, with the exception of the medical report in exhibit B, which was a part of the administrative record:[4]

#### 2. Nee's First Declaration

UNUM contends that Ms. Nee's first declaration, docket no. 40, should be stricken because she lacks personal knowledge of the claim and is not an expert and she offers medical and legal conclusions. The Court strikes paragraphs six (6) through thirteen (13) of Ms. Nee's first declaration, docket no. 40. Ms. Nee states that the claim was wrongfully denied. Nee Decl., docket no. 40, ¶¶ 6–13. These are legal conclusions, and Ms. Nee is not an expert.

With respect to the rest of the declaration, Ms. Nee has stated that the information is based on her personal knowledge. The Court DENIES UNUM's first motion

---

3. The preexisting condition clause in *Bullwinkel* provided the following:

No benefits are payable for a condition, sickness, or injury for which you or your dependent were seen, treated, diagnosed, or incurred medical expense in the six-month period just before insurance starts until the earlier of: ... for you or your dependent, the end of a period of twelve consecutive months after insurance starts.

*Bullwinkel*, 18 F.3d at 430.

The policy in *Kirk* provided that "no benefits [were] payable for expenses due to any Injury or Illness beginning before the effective date of the coverage." *Kirk*, 942 F.2d at 505.

4. Exhibit A of Dr. Lammert's declaration contains Dr. Lammert's January 9, 2001, report. This exhibit contains the third page that was not apart of the administrative record. The third page contains notes relating to Dr. Lammert's prescribed treatment of nasal steroids and Claritin, as well as instruction regarding a follow up visit. Lammert Decl., docket no. 38, Ex. A.

to strike with respect to the rest of the declaration.

### D. Plaintiff's motion to strike, docket no. 36

 Plaintiff has moved to strike Exhibit D of the Hong Declaration, docket no. 33. Plaintiff contends that UNUM failed to timely disclose this document and that it was not a part of the administrative record. Exhibit D is a copy of Dr. Lopez's medical report. Hong Decl., docket no. 33, ¶ 7. Plaintiff argues that the memo was not produced in the initial disclosures and that it was produced after UNUM claimed that the entire administrative record had been produced. Plaintiff further alleges that the memo was created when the claim was denied on appeal.

UNUM admits that the memo was inadvertently omitted and provided as soon as UNUM discovered that it had been omitted. Moreover, the computer system's time and date stamp reflects that the report was created before the appellate review and was considered during the appellate review. Guite Decl., docket no. 45, Ex. C (Hong Dep., pg. 33, lns. 15–23; pg. 36, lns. 14–17). The document is properly before the Court, and Plaintiff relies on the memo in his supplemental briefing. The Court DENIES the motion to strike.

*CONCLUSION*

The Court GRANTS Defendant's motion for summary judgment, docket no. 32.

The Court GRANTS in Part and DENIES in Part Defendant's first motion to strike, docket no. 44. The Court GRANTS in Part and DENIES in Part Defendant's second motion to strike, docket no. 56.

The Court DENIES Plaintiff's motion to strike, docket no. 36.

The Clerk is directed to enter judgment dismissing this case.

IT IS SO ORDERED.